JANVIER, Judge.
Mrs. Camille Weber Weems, wife of 'Charles C. Weems, sustained physical injuries while a passenger in a taxicab of Toye Brothers Yellow Cab Company, a partnership of which the partners are Frank E. Toye, George A. Toye, Joseph Toye, Paul Toye and Mrs. Robert Toye.
The cab, driven by Paul Juge, an employee of the partnership, was brought to a sudden stop to avoid striking a pedestrian who ran around the rear of a bus of New Orleans Public Service, Inc., into the street directly in front of the cab.
Mr. and Mrs. Weems brought this suit against the partnership and the individual members, he claiming $55 as the cost of medical and other expenses made necessary by the injuries of Mrs. Weems, and she praying for judgment for $5,500 to compensate her for her suffering and disability.
Plaintiffs alleged that the operator of the cab “failed to keep a proper lookout,” and “failed to see the passengers who were discharged from the bus in the center of said street until he was almost upon said passengers.”
They alleged, too, that the stop was so violent that Mrs. Weems, who was seated on the rear seat with her seven year old son, was thrown against the rear of the front seat and sustained the injuries complained of.
Defendants deny that there was any negligence on the part of the driver of the cab and aver that “suddenly a colored woman ran from behind a parked New Orleans Public Service bus directly in front of said cab.”
There was judgment against plaintiffs dismissing their suit and they are now before us on appeal.
Mrs. Weems and her son had boarded the cab at the station of the Greyhound Bus Line and had instructed the driver to take them to their home on Port Street and had allowed him to select the route. He drove down St. Claude Avenue and stopped because of a red semaphore traffic light which faced him. After the light became favorable he turned his cab to the right around the corner into Almonaster Avenue, which is a two-way thoroughfare and on which avenue alongside the curb to the left of the cab there were three busses of the New Orleans Public Service, Inc., which were standing still. Apparently they were receiving or discharging passengers, though there is no evidence which expressly shows this. There is evidence to the effect that other pedestrians were near them though none, except the one in question was attempting to cross Almonaster Avenue. The cab was proceeding at a speed of between 15 and 20 miles an hour and at this speed had reached a point just at the rear of the second bus, or about 75 feet from the corner at which it had turned. Suddenly and without any warning a woman— whether she had been a passenger of one of the busses is not shown — ran into the street from behind the second bus and, as both the driver and Mrs. Weems say, “dashed” into the path of the cab. The operator applied his brakes violently and brought it to a stop within a few feet, about two or three feet from the pedestrian who was crossing. The pedestrian ran off at such speed that the driver, after bringing his cab to a stop, could not catch her though he ran after her. This Í9 of no importance except that it explains the inability of the defendants to produce the pedestrian as a witness.
The entire story is best told by the statement of Mrs. Weems herself which she made shortly after the occurrence and which in part reads as follows:
“* * * the cab came down St. Claude and made a right turn onto Almonaster towards the river; the cab wasn’t going fast; I had just told the driver about going slowly; he turned *244 the corner slowly and ha'd just started towards the river, when a negro woman darted from between the Public Service Buses that were stopped at the bus zone; when this negro woman darted out from between the two buses, she darted right out in front of the cab; the cab driver jammed on his brakes so quickly I was thrown off the seat and up against the back of the front seat so hard, it pushed the seat forward and I hurt my side and my knee; if the cab driver had not stopped as he did, he would have killed the negro woman who ran as soon as this happened; the cab driver jumped out and ran to catch her, but he lost her and could not catch her; * * *”
There is no serious charge that the taxicab was proceeding at too high a rate of speed as is evidenced by the signed statement of Mrs. Weems herself and by the testimony of the taxicab driver. It is true that when Mrs. Weems testified in Court she attempted to change her statement slightly and when she was asked whether she had said in the signed statement that the cab “wasn’t going fast,” she said: “It was going at a pretty good speed.” However, when the entire statement had been read to her and she was asked whether it was correct, she admitted that it was. Furthermore, the fact that the cab was brought to a stop within a few feet indicates that the speed could not have been excessive.
It is conceded, of course, by defendants that where a passenger in a common carrier vehicle is injured by occurrences which are caused by events which take place outside the vehicle and about which the passenger could have no knowledge, the burden is on the carrier to show that it was free of negligence. Cusimano v. New Orleans Public Service, Inc., 170 La. 95, 127 So. 376.
It is also conceded, however, on behalf of plaintiffs that if a carrier can show that a situation which created an emergency and from which an accident resulted was not caused or contributed to by negligence of any employee of the carrier, then there is no liability in the carrier.
Here it is claimed that the emergency was caused or contributed to by the fact that the driver of the cab was not on the alert and was driving the cab at an excessive rate of speed and could have brought it to a safe and gradual stop had he been on the alert.
The facts by no means justify the application of the rule contended for by plaintiffs, i. e., that there is liability where an emergency is created or contributed to by an employee of the defendant carrier. The evidence, without the slightest doubt, shows that the driver was operating the cab carefully and was keeping a proper lookout and' that without any reason for him to anticipate it, the pedestrian, about 75 feet from the corner and who could not be seen because of the busses, dashed into the street in front of the cab.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.